```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
In re: MF GLOBAL, INC.,              :
                                     :          12 Civ. 6014
                          Debtor.    :
                                     :          MEMORANDUM & ORDER
------------------------------------ X
                                     :
CONOCOPHILLIPS COMPANY, et al.,      :
                                     :
                                     :
Plaintiffs,                          :
                                     :
             v.                      :
                                     :
JAMES W. GIDDENS, Trustee for the SIPA :
Liquidation of MF Global, Inc.,      :
                                     :
                          Defendant. :
------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONiCALLY FILED
DOC #:_____
DATE FILED: OCT 0 4 2012

KATHERINE B. FORREST, District Judge:

    CononcoPhillips Company ("CPC") and ConocoPhillips Canada Marketing & Trading ULC ("CPCMT" and collectively with CPC, "ConocoPhillips") have moved for an order pursuant to 28 U.S.C. § 157(d) withdrawing the reference from the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") with respect to a motion by James W. Giddens (the "Trustee"), as trustee for the SIPA liquidation of MF Global, Inc. ("MFGI"), seeking confirmation of the Trustee's treatment of ConocoPhillips' customer claims, including the treatment of certain letters of credit (the "Trustee's Motion"). The Trustee opposes ConocoPhillips' motion. The Commodity

1

Futures Trading Commission ("CFTC") submitted a statement and appeared at oral argument in response to ConocoPhillips' motion.

The motion to withdraw was fully submitted as of September 11, 2012.[1] The Court heard argument on September 25, 2012. For the reasons set forth below, ConocoPhillips' motion is granted and the reference of the Trustee's Motion is withdrawn from the Bankruptcy Court.

## BACKGROUND

A.  Factual Background

The instant motion arises out of the now-(in)famous collapse of MFGI. None of the relevant facts relating to the motion are in dispute.

When MFGI was a fully operational commodities broker, ConocoPhillips was one of only nine MFGI customers that MFGI allowed to support its commodities trading by posting letters of credit in lieu of other collateral.

Over time, ConocoPhillips obtained six letters of credit to support its various trading activities. CPC obtained two letters of credit to support its trading on foreign exchanges (the "Foreign LOCs"). The Foreign LOCs expired by their terms on November 23, 2011--shortly after MFGI entered bankruptcy in October 2011. (See Decl. of Emil A. Kleinhaus (Dkt. No. 3)

---

[1] On September 25, 2012, the CFTC filed a letter "clarifying" an issue raised at the oral argument (Dkt. No. 24), and ConocoPhillips submitted a brief response on September 27, 2012.

("Kleinhaus Decl.") Exs. D, E.) Prior to expiration, the Foreign LOCs could only be drawn down if MFGI certified that CPC "has defaulted in accordance with the terms and conditions of the [parties'] agreement . . ." (See, e.g., Kleinhaus Decl. Ex. D at 6.) It is undisputed both that no event of default ever occurred and, at expiration, neither of the Foreign LOCs had been drawn upon.[2]

CPC obtained three additional letters of credit to support its trading through MFGI on domestic exchanges (the "Domestic LOCs"). The terms of the Customer Agreement between MFGI and CPC required an event of default for MFGI to call any of the Domestic LOCs. (See Kleinhaus Decl. Ex. C at §§ 4-5.) There is no dispute that at the time MFGI commenced liquidation, no event of default had occurred and thus, MFGI had not drawn down any of the Domestic LOCs. By their terms, the Domestic LOCs expired on March 30, 2012. (Kleinhaus Decl. Exs. F-H.) Prior to the Domestic LOCs' expiration and subsequent to MFGI's bankruptcy, the Trustee and ConocoPhillips entered into an interim agreement by which the Domestic LOCs would be returned to ConocoPhillips-- but frozen--pending a determination by a court on how to treat the proceeds of those LOCs (the "interim agreement"). Tr. of

---

[2] It is also undisputed that the two Foreign LOCs expired by their terms with no reservation of rights or other arrangement between ConocoPhillips and the Trustee.

3

Oral Arg. at 7:5-9, ConocoPhillips Co. v. Giddens, No. 12 Civ. 6014 (S.D.N.Y. Sept. 25, 2012) (hereinafter "Tr.").

CPCMT also obtained a sixth letter of credit (the "CPCMT LOC" and with the Foreign and Domestic LOCs, the "LOCs"), which likewise required MFGI to certify the occurrence of an event of default in order to draw upon it. (Kleinhaus Decl. Ex. J; see also id. Ex. I § 4.) It is undisputed that no such default occurred and, prior to MFGI's bankruptcy, MFGI never drew upon the CPCMT LOC. The interim agreement also applies to the CPCMT LOC (which, by its terms expired on July 25, 2012).[3] Tr. at 7:5-9.

On October 31, 2011, the Trustee was appointed to oversee MFGI's liquidation. As part of the liquidation proceedings, ConocoPhillips filed customer claims against MFGI's estate to recover cash that it had maintained at MFGI. (Kleinhaus Decl. Exs. L-M.) In its May 22, 2012, determination of ConocoPhillips' claims, the Trustee allowed CPC and CPCMT claims in certain amounts, but also determined that part of those claims had already been remitted in the amounts of CPC's and CPCMT's respective LOCs. (See Kleinhaus Decl. Exs. N, O.)[4]

---

[3] The parties also agreed to apply the interim agreement to the expired Foreign LOCs during the pendency of litigation over how the LOCs should be treated as part of ConocoPhillips' customer claims. See Tr. at 7:5-9.

[4] Specifically, the Trustee allowed CPC a claim of $267,415,560 of which, according to the Trustee, $195 million had already been paid (Kleinhaus Decl. Ex. N at 1), and allowed CPCMT a claim of $36,413,371, of which--under the

4

The Trustee has asserted that the full proceeds of the six LOCs--which total $205 million--constitute customer property subject to ratable distribution. Accordingly, as to CPC, the Trustee credited $135 million--<u>i.e.</u>, the face value of the Domestic LOCs--as already having been transferred to CPC with respect to its domestic futures accounts, and $60 million--<u>i.e.</u>, the face value of the Foreign LOCs--as already having been transferred with respect to CPC's foreign futures accounts. (<u>See</u> Kleinhaus Decl. Ex. N at 3.) Regarding CPCMT's claim, the Trustee credited $10 million (<u>i.e.</u>, the face value of the CPCMT LOC) with respect to CPCMT's foreign futures trading claim. (Kleinhaus Decl. Ex. O at 3.)[5]

Given the Trustee's position that the full proceeds of the LOCs constitute customer property, it is possible that at some point ConocoPhillips will be required to return to MFGI's estate amounts in excess of the amounts that the Trustee determined each customer is entitled ratably to receive. In other words, if, by virtue of having received the full face value of the LOCs ConocoPhillips is later determined to have recovered more than

---

Trustee's theory--$11,113,709 (which included the $10 million face value of the CPCMT LOC) had already been paid (Kleinhaus Decl. Ex. O). The Trustee determined that the amount of the claims related to both the domestic and future "allowed to [ConocoPhillips] includes the face value of the letters of credit . . . that were posted by [ConocoPhillips] as margin for futures activity . . . ." (Kleinhaus Decl. Ex. N at 3 nn.5-6.)

[5] ConocoPhillips seeks to recover a total of $40 million that is not covered by the LOCs. Tr. at 26:19-23.

5

its ratable share, it is possible that ConocoPhillips could end up owing the estate. See Tr. at 7:15-8:11.

B. Procedural Background

On June 22, 2012, ConocoPhillips filed an objection in the Bankruptcy Court to the Trustee's claims determination. (Kleinhaus Decl. Ex. P.) Specifically, ConocoPhillips objected to the determination on the grounds that the "Trustee has miscalculated [ConocoPhillips'] claims by including the face value of letters of credit provided by ConocoPhillips to [MFGI] both in the allowed amounts of the claims and in the amounts supposedly 'distributed' to ConocoPhillips on account of the claims." (Id. at 2.) According to ConocoPhillips, the Trustee's approach--i.e., treating the LOCs as if they "had been drawn in full and their proceeds were being held by the Trustee"--left ConocoPhillips with a shortfall in ratable distributions owed. (Id.)

On July 30, 2012, the Trustee filed a motion (what is referred to herein as the "Trustee's Motion") for an order seeking to confirm its determination as to ConocoPhillips' "claims to customer accounts margined with letters of credit." (Kleinhaus Decl. Ex. A at 1.) The Trustee's Motion relies upon the position that all customer account collateral--of whatever nature--in excess of a customer's margin obligations becomes "customer property" once a commodities broker goes into

6

liquidation. According to the Trustee, it would be inappropriate to treat LOCs differently from other collateral. In that vein, the Trustee relies upon CFTC Regulation 190.08(a)(1)(i)(E), which provides that "the full proceeds of a letter of credit" must be treated as "customer property," subject to pro rata distribution. (Id. at 2, 12-13.)

DISCUSSION

A.  Legal Standard

Section 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). Section 157(d) therefore provides for both discretionary withdrawal for cause (the first sentence of the statute), and mandatory withdrawal when a court must consider federal laws other than title 11 (the second sentence of the statute). Here, ConocoPhillips moves for mandatory withdrawal.

Mandatory withdrawal "is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for resolution of the proceedings." In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990). "Substantial and material consideration" means

7

"significant interpretation, as opposed to simply application, of federal laws apart from the bankruptcy statutes." City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991); see also In re Enron Corp., No. 04 Civ. 8177, 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) ("The purpose of § 157(d) is to assure that an Article III judge decides issues calling for more than routine application of federal laws outside the Bankruptcy Code." (quotation marks and alteration omitted)). Although mandatory withdrawal does not require matters of first impression be involved, where they are, "the burden of establishing a right to mandatory withdrawal is more easily met." Picard v. JPMorgan Chase & Co., et al. ("JPMorgan"), 454 B.R. 307, 312 (S.D.N.Y. 2011) (quotation marks omitted); Bear, Stearns Secs. Corp. v. Gredd, No. 01 CIV 4379, 2001 WL 840187, at *2 (S.D.N.Y. July 25, 2001) (same). Resolution of a motion to withdraw the reference does not, however, require an analysis of "the merits of the parties' positions concerning the statutes of th[e] property in dispute." Gredd, 2001 WL 840187, at *4; see also JPMorgan, 454 B.R. at 312.

    B.    Analysis

In order for mandatory withdrawal to be appropriate under section 157(d), this Court must find that at least one issue requires "substantial and material consideration" of federal non-bankruptcy law. Here, there are three such issues. All

8

three implicate Regulation 190.08(a)(1)(i)(E). That provision provides, in pertinent part:

> The property of the debtor's estate must be allocated among account classes and between customer classes as provided in this section, except for special distributions required under appendix B to this part. The property so allocated will constitute a separate estate of the customer class and the account class to which it is allocated, and will be designated by reference to such customer class and account class.
> (a) (1) Customer property includes the following . . .
> (i) All cash, securities, or other property or the proceeds of such cash, securities, or other property received, acquired, or held by or for the account of the debtor, from or for the account of a customer, including a non-public customer, which is: . . .
> (E) The full proceeds of a letter of credit if such letter of credit was received, acquired or held to margin, guarantee, secure, purchase or sell a commodity contract . . .

17 C.F.R. § 190.08(a)(1)(i)(E). The CFTC promulgated the Part 190 Regulations pursuant to the CEA, 27 U.S.C. § 24(a) (*i.e.*, a statute not part of title 11 of the Bankruptcy Code). ConocoPhillips concedes that the CFTC enacted the Part 190 Regulations to implement or supplement the commodity broker liquidation provisions of the Bankruptcy Code. (See Mem. of Law in Support of ConocoPhillips' Mot. to Withdraw (Dkt. No. 2) ("CP Mem.") at 11.)

Once MFGI entered bankruptcy, the Trustee interpreted CFTC Regulation 190.08(a)(1)(i)(E) as not only allowing, but also requiring, that the "full proceeds" of the undrawn LOCs be included with all other customer property, subject to ratable

9

distribution. The Trustee then referenced those "proceeds" (which had not been reduced to proceeds in fact) as fulfillment of a substantial portion of ConocoPhillips' customer claims. The Trustee readily concedes that outside of the liquidation context, MFGI could not have drawn upon any of the LOCs. According to the Trustee, their treatment of the full proceeds of the LOCs as customer property is appropriate because, as evidenced by the Part 190 Regulations, "everything changes in bankruptcy" such that the Trustee can count the full proceeds of an undrawn letter of credit as part of the estate's overall customer property.

ConocoPhillips argues that the Trustee's treatment of the LOCs raises three issues that require "substantial and material consideration" of federal non-bankruptcy law: (1) the correct interpretation of "full proceeds" in CFTC Regulation 190.08(a)(1)(i)(E); (2) whether the Trustee's interpretation of Regulation 190.08(a)(1)(i)(E) conflicts with the CEA's prohibition on the CFTC regulating bank products; and (3) whether the Trustee's interpretation of Regulation 190.08(a)(1)(i)(E) conflicts with state law regarding letters of credit, and therefore implicates the federal law of preemption.

    1.    <u>Interpretation of Regulation 190.08(a)(1)(i)(E)</u>

The Trustee's treatment of the LOCs requires judicial interpretation of the meaning of "full proceeds" in Regulation

190.08(a)(1)(i)(E) as applied to undrawn LOCs. ConocoPhillips argues that the Trustee's use of Regulation 190.08(a)(1)(E) to treat the LOCs as if they had been fully drawn (i.e., to "treat the face of letters of credit as 'customer property' subject to pro rata distribution" (CP Mem. at 14)) is novel--and that consideration of that interpretation is a matter of first impression. At oral argument, the Trustee conceded that a court has not "answer[ed] this question before." Tr. at 56:8-19.[6]

The Trustee argues that this interpretative issue does not require "substantial and material consideration" of federal non-bankruptcy law because the Part 190 Regulations are effectively (although not literally) part of the Bankruptcy Code because they were intended to regulate liquidation of commodities brokers. (Tr.'s Mem. of Law in Opp'n to ConocoPhillips' Mot. to Withdraw the Ref. (Dkt. No. 18) ("Tr. Mem.") at 3, 7-10.) That overlooks--despite the Trustee's concession on this point (id. at 8)--that the regulations were

---

[6] The Trustee argues that interpreting "full proceeds" as anything other than the face value of the letters of credit renders the regulation nugatory. Although this is an issue to be resolved at the merits stage of this proceeding, the Court noted at oral argument that the regulation could apply to a situation where "there has been a trigger for a letter of credit and the trigger may have actually occurred thereby making the CFTC provision live and actually relate to real proceeds as opposed to the generation of proceeds." Tr. at 5:15-18.

promulgated pursuant to powers granted to the CFTC under the CEA, which indisputably is not part of title 11.[7]

Further, the Trustee argues that to hold that interpretive questions relating to Regulation 190.08 require reference to "other laws of the United States" would require vast numbers of questions go to the district courts that more properly belong in the bankruptcy court. (See Tr. Opp'n at 9-10); see also Tr. at 54:9-55:12. This Court is mindful of the Second Circuit's admonition that withdrawal should be "construed narrowly." See In re Ionosphere Clubs, Inc., 922 F.2d at 995. Under the circumstances here, however, the interpretive issues relating to the differing treatment of letters of credit in and out of liquidation is a larger question that potentially implicates a host of non-liquidation issues--e.g., how financial transactions are structured and risks allocated. This interpretative issue is substantial and material insofar as Regulation 190.08(a)(1)(i)(E) only is concerned--not all applications of Regulation 190.08 will require substantial and material consideration of laws outside of title 11.[8]

---

[7] That the Part 190 Regulations are "closely connected to the Bankruptcy Code" (see Tr. Mem. at 8) does not change the Court's analysis.

[8] If the Trustee consistently is--and has been--applying the Part 190 Regulations to various types of property held at MFGI and cannot cite to other instances where district courts have withdrawn the reference (in the MFGI liquidation or others) that demonstrates to this Court that withdrawal here--in these narrow circumstances relating to letters of credit under Regulation 190.08(a)(i)(E) only--will not create a sideshow to the Bankruptcy

The second sentence of section 157(d) is clear: if a court must consider title 11 <u>and</u> others laws of the United States, the Court must withdraw the reference from the Bankruptcy Court. 28 U.S.C. § 157(d). The CFTC is not title 11; it is "other laws" of the United States. Interpreting the meaning of "full proceeds" in this factual context requires "substantial and material consideration" of federal non-bankruptcy law. Thus, this Court must withdraw the reference. See, e.g., <u>JPMorgan</u>, 454 B.R. at 312; <u>Gredd</u>, 2001 WL 840187, at *2.

### 2. Resolving the Conflict between Regulation 190.08(a)(1)(i)(E) and the CEA

Even if the Part 190 Regulations were considered to effectively be part of title 11, there is an additional, independent basis for mandatory withdrawal. ConocoPhillips argues that the Trustee's use of Regulation 190.08(a)(1)(i)(E) to "generate" the "full proceeds" of letters of credit upon a commodities broker's liquidation conflicts with the CEA's prohibition on the CFTC regulating "bank products." (CP Mem. at 15.) The CEA bars the CFTC from "exercis[ing] regulatory authority under the [CEA] with respect to[] an identified banking product." 7 U.S.C. § 27a(a)(1). An "identified banking product" statutorily includes "a letter of credit issued . . . by a bank." Pub. L. No. 106-102, 113 Stat. 1338 § 206(a)(3)

---

Court's administration of MFGI's estate. Regardless, the Court's ruling on the instant motion to withdraw should be construed narrowly.

13

(codified at 15 U.S.C. § 78c note.)[9] Thus, according to ConocoPhillips, this Court must withdraw the reference to determine whether Regulation 190.08(a)(1)(i)(E), as interpreted by the Trustee, has allowed the CFTC to exceed the scope of its regulatory authority by regulating what the CEA has defined as a "bank product."

Both the Trustee and the CFTC argue that the regulation at issue does not implicate the CFTC's authority because the rule at issue (190.08(a)(1)(i)(E)) is not "regulating" an identified banking product. (Tr. Mem. at 19; Stmt. of the CFTC in Resp. to ConocoPhillips' Mot. to Withdraw the Ref. (Dkt. No. 20) ("CFTC Mem.") at 11-12.) However, it is clear that the Part 190 Regulations may well "regulate." There is no dispute that there is a difference between how LOCs are treated in and out of liquidation.

To explore that point, at oral argument the Court inquired of the Trustee how, in fact, the estate could draw upon any of the LOCs at issue here. Tr. at 42-43. Under "normal" (i.e., non-bankruptcy) circumstances, a letter of credit may only be drawn if the holder presents the requisite documentation, as specified by the letter. Here, the LOCs require that an event of default have occurred for the letter to be drawn--and the

---

[9] The Trustee concedes, as it must, that "Congress intended to exempt certain banking products, including letters of credit, from regulation as futures contracts." (Tr. Mem. at 19.)

14

Foreign and CMPCMT LOCs even require presentation of a certificate from MFGI that an event of default has occurred. (See Kleinhaus Decl. Exs. D, E, F, G, H, J; see also id. Exs. C, I.)

In response to the Court's questions about how a letter of credit held by a the trustee of a bankrupt commodities broker could be drawn upon, the Trustee explained that it would present one or more of the LOCs, all of which require an event of default have occurred and three of which additionally require a certificate of an event of default, without any documentation, to the bank, along with information certifying the commodities broker's bankruptcy. Tr. at 43:12-44:4. The Trustee conceded that it was unclear how the bank would respond. Tr. at 44:5-10.

This line of questioning highlighted the unresolved question with respect to whether in liquidation a commodities broker's trustee use of Regulation 190.08(a)(1)(i)(E) somehow generates "proceeds" from letters of credit used to secure margin at the broker, rather than marshals them. If this is so, there is an argument that Regulation 190.08(a)(1)(i)(E) might "regulate" LOCs by changing their treatment--and thus, might contravene the CEA's prohibition. Such an inquiry necessarily requires "substantial and material consideration" of federal non-bankruptcy law--i.e., to determine whether the CFTC is "regulating" an identified banking product or acting within the

15

scope of its regulatory authority under the CEA.[10]  The Court will have to consider the CEA in order to determine whether the CFTC has exceeded its regulatory authority--<u>i.e.</u>, whether there is a conflict between the Part 190 Regulations and the CEA because the CEA prohibits, but that Rule 190.08(a)(1)(i)(E) may require, "regulation" of an identified banking product.[11]  Interpreting the CEA--which is undoubtedly not part of title 11--and whether the CFTC is regulating letters of credit unquestionably requires "substantial and material consideration" of federal non-bankruptcy law.

>    3.  <u>Resolving Whether the Regulation 190.08(a)(1)(i)(E) (or the Supplementary Information) Preempts State Law</u>

ConocoPhillips argues that the third issue that requires "substantial and material consideration" of federal non-bankruptcy law relates to the alleged tension between

---

[10] The CFTC argues that it has not exceeded its regulatory authority because it is possible that the LOCs are not identified banking products unless there has been a determination by a banking agency "in consultation with the CFTC" that such products constitute "swaps." (CFTC Mem. at 11.) That is an issue that goes to the merits, rather than the question of what laws this Court will need to apply to resolve the issue--and to what extent.

[11] The Trustee argues--based upon the legislative history of the Part 190 Regulations (referred to as the "Supplemental Information")--that its treatment of ConocoPhillips' customer claims is in accord with the CFTC's intent with respect to letters of credit. (Tr. Mem. at 14-15.) Such history is not reflected within the regulation itself. In addition, having determined that the Part 190 Regulations are outside of title 11 necessarily takes the legislative history outside of title 11 as well. Thus, to the extent the Trustee believes this Court must recognize or use the legislative history of the Part 190 Regulations to interpret the Trustee's treatment of the LOCs, that is additional "substantial and material consideration" of federal non-bankruptcy laws that requires mandatory withdrawal. Further, the Supplemental Information does not address how a Trustee should treat <u>expired</u> letters of credit (which the Foreign LOCs are) and thus, the Court will have to address that issue--another matter of first impression--as well.

16

federal and state law--and implicates the preemption of the latter by the former. Neither party disputes that under the Uniform Commercial Code (and interpretative case law), drawing upon a letter of credit without meeting the terms of the letter (having made a misrepresentation--express or implied--that the terms of the letter had been met) could constitute "material fraud." U.C.C. § 5-109 cmt.1; see also Ground Air Transfer, Inc. v. Westates Airlines, Inc., 899 F.2d 1269, 1273 (1st Cir. 1990) (Breyer, J.). According to ConocoPhillips, the Trustee cannot draw on the LOCs without stating that the terms or trigger for the LOC have been met, namely a default (and in some instances, a certificate thereof). Because the parties agree that no default has occurred, according to ConocoPhillips drawing on the LOCs must therefore require a material fraud on the bank. The Trustee has stated that it in no way intends to mislead a bank regarding a state of default. Instead, as discussed above, in order to draw upon one of the LOCs, the Trustee (or a designee) would approach the banking institution, inform it that MFGI was in liquidation and state the bank must honor the LOCs pursuant to Regulation 190.08(a)(1)(i)(E). According to the Trustee, what happens next (at the bank) is unclear. ConocoPhillips argues that even that course of action creates a difference between how letters of credit are treated under non-liquidation state contract law and how they are

17

treated in liquidation of a commodities broker under the CFTC Regulation.

This scenario raises the question of whether the CFTC Regulation is preempting, or can appropriately preempt, state law (which the statute does not purport to do on its face).[12] Consideration of that issue will require the Court to "substantial[ly] and material[ly] consider[]" law relating to federal preemption. The Court will have to consider, for example, whether Congress, in providing the CFTC with authority to promulgate the Part 190 Regulations under the CEA, intended to preempt state law regarding treatment of letters of credit in liquidation. See, e.g., Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516 (1992) (congressional intent is "the ultimate touchstone" of preemption analysis). The Court will likewise have to consider whether the "scope, structure, and purpose" of the Part 190 regulations "implicitly" manifests such an intent. See New York SMSA Ltd. P'ship v. Town of Clarkstown, 612 F.3d 97, 104 (2d Cir. 2010). Accordingly, mandatory withdrawal is appropriate on this basis as well.

---

[12] The Supplementary Information, however, would seem to have the regulation at issue preempt state law.

CONCLUSION

For the aforementioned reasons, ConocoPhillips' motion to withdraw the reference of the Trustee's Motion from the Bankruptcy Court is GRANTED; the reference is WITHDRAWN.

Despite the agreed-upon briefing schedule the parties submitted to the Bankruptcy Court, the parties should confer and, no later than October 10, 2012, submit a briefing schedule on the Trustee's Motion that has it fully briefed no later than December 3, 2012. The Court will hear oral argument on the motion on **December 19, 2012, at 9:30 a.m.**

The Clerk of the Court is directed to terminate the motion at Docket No. 1.

SO ORDERED:

Dated:  New York, New York
        October 4, 2012

_____
KATHERINE B. FORREST
United States District Judge